You may please the court. Good morning, Your Honors. Speak right up. I am Robert Freeman. I represent Appellant North Las Vegas Police Officer Anthony Bailey in this interlocutory appeal from the Nevada District Court's denial of his request for qualified immunity. That request for qualified immunity involved the officer-involved shooting of Billy Ray Finks Jr. in North Las Vegas, Nevada, on February 27, 2001. And the issue presented today on this interlocutory appeal was whether the Nevada District Court applied the appropriate test to analyze Bailey's claim of qualified immunity. My understanding of the facts is the officer, after the car chase and the stolen car was cornered, exited his vehicle, used the door as protection, and this is his statement of facts. The deceased got out of the vehicle and pointed what turned out to be a toy gun at him. The officer thought it was a real gun, ordered him to drop it. He refused. The officer fired, and the individual was killed. The passenger in the car, although he gave some differing statements at one point in time or another, said that the toy gun was in the glove compartment. It was never out. The officer never told Finks to drop any weapon he might have. How could the district court resolve that factual dispute on summary judgment? Well, Your Honor, you're correct. Did I state it incorrectly? No. You're correct in your description of the facts. There are quite a few more facts than that. But essentially, DeMario Payton did give a statement directly after the incident in which he admitted all of the facts that are consistent with Officer Bailey's description of the incident. After that, at some point after that, between that time and the time that his deposition was taken, he recanted some but not all of the facts. When you look at his deposition, true, the important fact of did Billy Ray Finks get out of the car with the gun, he recanted. He said the gun was still in the car. But there are important reasons why the district court could have determined that that was not a genuine issue of material fact. Counsel, isn't there a rule binding on the appellate court that if the district court's basis for decision is that there's a genuine issue of material fact, that we don't have jurisdiction even to revisit that question? You state correctly the term. I think it's in the Pellegrino case and cases after that. It's our contention that the Nevada district court, and I have alternative arguments to this, but it's our contention that the Nevada district court misapplied the test for qualified immunity to this case. Part of the misapplication. Well, I guess I'm not sure that we're communicating about the issue that concerns me. To the extent that the district court said there are issues of fact here that I can't resolve on summary judgment, that that's for a trier of fact, do we even have jurisdiction to revisit that question, that specific issue that there is an issue of fact? Aren't we bound by that? You certainly have jurisdiction to determine whether the issue of fact is material to Officer Bailey's claim of qualified immunity. How could the presence or non-presence of a gun, toy or not, not be material? Well, the other facts that are undisputed in the case. Is there any more central fact than whether the deceased exited the vehicle and pointed what turned out to be a toy gun at the officer? Is there any more central fact? Well, that is an important fact. I can see that's an important fact, Your Honor. How could the district court resolve that, given the conflict in the testimony, understanding that there are inconsistencies in the statements and that sort of thing? How could the district court resolve that? In the secondary question, I have the same question. You understand we don't confer prior to argument. I have the same question Judge Graber does. If it's fact-based, if the reason the district court declined to give your client qualified immunity is based on a factual dispute, how do we have jurisdiction under Johnson to hear that? I understand. Your Honor, you would still have jurisdiction to determine whether the fact you could resolve the what the district court should have done is resolve the disputed fact in favor of the plaintiff. How? By determining, I guess, that Billy Ray Fink did not get out. One side is more believable than the other? No. The test, as I understand it, requires the court to resolve the factual issue in favor of the plaintiff. Assume it, you mean, rather than not resolve it. Assume it's true. Yeah. Assume it's true, and then apply the specific undisputed facts, including that one, to the fact pattern, measure it against the comparative case law, and decide whether Officer Bailey was entitled to qualified immunity. Well, if the facts are taken in the plaintiff's favor here, the defendant shot an unarmed joyrider. Well, more than that. More than that. What more? Okay. And wouldn't that permit the plaintiff to recover? More than that. Well, I submit that it's a little more complicated than that, Your Honor. Officer Bailey, at the time that he exercised deadly force, and if you concede that whether or not Billy Ray Fink got out of the car with a gun or without a gun is a genuine issue. We can't concede that for purposes of the Saussure analysis. We have to assume that when he got out of the car, he had the gun, at least for determining whether there's a clearly established constitutional right and whether it's violated. When he got out of the car, he didn't have the gun. You're assuming that. Also, things that you should assume are that Officer Bailey knew that Billy Ray Fink and Demario Payton were driving a stolen car recklessly, that they were evading police. It's undisputed that they ran from the police at Cheyenne High School, that they nearly caused a car accident getting out of that parking lot, that Officer Bailey found the stolen car in the area where the report was given to him, that the driver was nervous when he realized that Anthony Bailey driving a patrol car was behind him and tried to evade him by making a sudden right turn on a dead-end road, trying to create distance. Remember that that radio report that was given to Officer Bailey said that the occupants of the car were being pursued by Las Vegas Metropolitan Police gang unit members because they believed that the occupants of the car were involved in a shooting that had occurred the previous weekend. Anthony Bailey is trying to get back up. He's alone on a dead-end road when the car stops. He is fearful enough for his own safety that he's standing in the door jamb of his car. These are undisputed facts. When the kids get out of the car, he tells them to stay in the car. They won't. He tells them to get back in the car at least two times, and they won't. And he shoots Billy Ray Finks in a reasonable fear for his own safety. Now, if you look at the court, I provided the court with two cases that decided since the briefing in this case. One case was decided by this court, the Ninth Circuit, last month, called Blanford v. Sacramento County, and that is the case where the police shot a man who had a Civil War sword, and he was waving it in the neighborhood, and the police were called out, and they were giving him direction to put the sword down. He was ignoring them. He was walking away, and they were following. They shot him three different times. They shot him based upon his refusal to put the sword down. They shot him based upon his refusal to stop when they told him to stop, and then they shot him a third time when he was trying to get into the back door of a house. Those officers were granted qualified immunity, even though it turned out, in hindsight, the kid had on a stocking cap and headphones, never heard the officer say anything. The house he was trying to get into was his own house. Another case that I cited to the court was a U.S. Supreme Court case called Brasov v. Hagen, in which the officer was granted qualified immunity on facts that are less compelling than these, even if the gun issue is resolved against us. In that case, the officer shot a person who was driving away from her, shot him in the back. She had been called out to the scene because two guys were having a fist fight in the front yard of a house. I think we're familiar with Brasov that involved one of those rare Supreme Court reversals of our court. Did you want to save any time for rebuttal? You're down to under a minute. You know, I probably ‑‑ I'll stop and see if I want to make a rebuttal. Thank you for your argument, counsel. We'll hear from the other side at this time. Good morning, Your Honors. My name is Thomas Peterson, and I represent the appellees in this case. Your Honors, for openness, I want to indicate that we have a severe disagreement with defendant's counsel, appellant's counsel, with respect to the nature of the facts. We do not agree that the facts as he recited them are undisputed facts. And I'll go right to what's been characterized as the central issue, with respect to whether or not Billy Ray Fink got out of that vehicle with a toy in his hand. As you know, Officer Cummings of the Las Vegas Metropolitan Police Department prepared his report, which omitted any reference to seeing a gun. He said, I prepared this for the purposes of ensuring that those who are investigating this case can recreate it. In an explicit fashion, that was his statement. But do you really have to take on this burden? Aren't we required to assume the facts as you lay them out? Yes, sir. I do believe that. I do believe that, but I just wanted to make the point that Officer Hoyt, in counsel's reply brief, he said that it was undisputed that all of the officers agreed with their version of the case. I think it bears mentioning that Officer Hoyt, in his report, omitted any reference to seeing a toy on the premises as well. And he stated that he was there in the seconds following the shooting, after Billy Ray Fink lay dying on the desert floor. We questioned him about the absence of that entry in his report. And in his deposition transcript, the entire transcript of which was before the trial judge, he stated that I didn't see it. It's not in my report because it wasn't there. Let's assume, as we must, that there was no gun, no toy gun, no real gun. Yes, ma'am. Bill has made the argument that the other surrounding circumstances were sufficient to permit the use of deadly force, and he cites a couple of very recent cases which perhaps expand the opportunity for the use of deadly force. What is your response to that argument, that even assuming there was no toy gun, that under the case law it wasn't clearly established that they were in the wrong? Well, I think it was clearly established that a reasonable police officer would not have used deadly force under these circumstances. And I think that the law which provides us the basis for that emanates from the Illinois v. Gates line of cases. Officer, there's no question but that Officer Hoyt has admitted that that armed and dangerous broadcast was a complete fabrication. There's no question but that Officer Bailey has admitted that he acted pursuant to that armed and dangerous broadcast, for which there was no record. Tell us about whether Mr. Finks either advanced toward the officer, irrespective of whether there was a toy gun, but whether he advanced toward the officer or made a movement like he was going away. That's okay. Thank you. The record tells us, the record is that Billy Ray Finks did not have an opportunity to make any advance toward Officer Bailey. The record tells us that Billy Ray Finks was shot from left to right with a bullet entering his chest at a downward degree angle, 40 degrees. It entered his chest just to the right of the left nipple and exited his right armpit. So he was shot from left to right. The evidence tells us that there is blood deposited right at the door where he attempted to alight from the vehicle. And the medical examiner and our expert both agree that that's how the shooting occurred. That he was shot as he was trying to get out of the car. As a matter of fact, the evidence is that he was not even allowed to stand as he was attempting to get out of the car. He was shot as he was trying to stand. So the record is that he did not advance upon, and that's undisputed. That's undisputed. And if I might address one other aspect of the record, the claims are that Bailey always held this toy. He was playing with it, pointing it, and so forth. The defendants engaged in an extensive effort to tie Bailey, excuse me, Master Finks, to that toy by fingerprint evidence. And they couldn't do it. They went to the funeral home where the boy was lying in state, took his fingerprints and palm prints, then tested them to the identifiable latents which were on the toy, and there was no match. So I think the record is pretty clear that not only did he advance toward, that he did not advance toward Officer Bailey, but that he did not even have the weapon in his hand, the toy in his hand. I just want to say further that the defendants want, the appellant wants to proceed in this case as though the operative facts begin with the alleged pointing of the toy versus the gun. We have a serious disagreement with that. As I indicated, I believe the facts begin with Officer Hoyt. And because Officer Bailey has admitted that he arrested the boys at gunpoint before they ever got out of the car, Officer Hoyt, Officer Bailey's conduct must be tied to Officer Hoyt's conduct. He, Officer Bailey, effected the arrest based on that false and fabricated probable cause broadcast that was made by Officer Hoyt. Officer Bailey's conduct, then, constitutes an independent and intentional violation of the Fourth Amendment. If, then, his conduct constitutes an independent violation of the Fourth Amendment, the subsequent use of deadly force is attributed to him in terms of approximate cause as a matter of law. So we cannot view the case as though Officer Hoyt's conduct does not exist. I think we have your argument well in hand. Thank you very much for coming in today. Thank you. Do you have any rebuttal? Sure. Come right up. The court asked counsel about evidence in the record that Billy Rafink's advanced on the officer after the stop. And I suppose I disagree with counsel. I think that the fact that the record will reflect that Officer Bailey told them to stay inside the car and they didn't, once they got out of the car, he told them to get back into the car at least two times and they didn't, is evidence that they were either going to escape or they were going to advance on him. Two other things I disagree with counsel on, and one thing I think that we can all agree on is that it isn't sufficient to measure Officer Bailey's conduct against the general principles of Tennessee v. Garner or the Graham case. The mandate is that it be compared to the actual factual scenario that he faced. That's why the new cases I talked about are so important, and that's why what is in Officer Bailey's mind is so important. His conduct is measured by what he knew and observed, and what he knew and observed entitled him to qualified immunity even without the gun. Thank you. Thank you for your argument, counsel. I'd also like to thank both counsel for their argument. The case just argued will be submitted for decision. And the panel will now proceed to the second case on the argument calendar, which is Earth Island Institute against Kampara National, et cetera.
judges: Selna, Hawkins, Graber